**EDWARDS et al. v. STRONG et al.**

No. 14888.

Court of Civil Appeals of Texas.
Fort Worth.

Dec. 5, 1947.

Rehearing Denied Jan. 23, 1948.

J. R. Black, F. M. Bransford, and Ernest May, all of Fort Worth, for appellant Athans.

Frank E. Crumley and Martin, Moore & Brewster, all of Fort Worth, for appellees.

SPEER, Justice.

Plaintiff, Mrs. Nellie Whitehead Strong, at a time when she was (Mrs.) Nellie Whitehead, a widow, instituted this suit against defendants, Durwood McDonald, doing business as McDonald & Company, and we will hereinafter refer to him as McDonald, A. J. Edwards and wife, May Edwards, to whom we will refer as the Edwards, and J. Athans. At the time of trial plaintiff was married to Alan T. Strong and by amendment he was made a party plaintiff. We will refer to both as plaintiff unless necessary to indicate otherwise. The nature of plaintiff's cause of action will be noted later in this discussion.

Plaintiff, defendants Mrs. Edwards, McDonald and Athans were, at all times involved here, licensed real estate brokers. McDonald's organization consisted of himself and several associates who were not partners with him. Athans was one of such associates.

Plaintiff's trial pleadings are lengthy and in connection with the pleadings, the jury verdict and the testimony found by the jury favorable to the contentions of plaintiff we may make a fairly accurate statement of the situation before us for review. It is the settled law that we must consider all the testimony in its most favorable light in support of the jury verdict. We feel impelled also to state that practically all of the testimony relied upon by plaintiff to support her contentions and to support the verdict was contradicted by the testimony offered by the defendants in just as positive terms as the witnesses were able to express themselves.

Bearing in mind what we have already said, it appears that plaintiff had previously formulated a plan to construct a "Community Center" covering a designated area in the western part of the City of Fort Worth, and, to carry out her plan, she wanted to purchase all the property in that area, which included lot 1, block eleven, Van Zandt Park Addition; that lot was on the corner and considered by her the most important one in the area, and is the lot in controversy. Her project required a great deal of preliminary preparation, including procuring a corporate charter, inducing the City to close and widen streets and financing the project.

For some years in the past plaintiff had dealt with McDonald through Athans as his associate and agent; she disclosed to McDonald and Athans her plans and procured them to assist her in obtaining titles to some of the lots and options on others, the options to enable her to have more time in which to perfect her plans. A Mr. Griffin owned the corner lot here involved and plaintiff told Athans on October 9, 1945, to get an option on that lot for a week or two enabling her to purchase it and Athans undertook to do so and reported back to plaintiff on the next day that he had the option and that the seller would accept $6500 net to him. (It is undisputed throughout this record that what Athans called an option was an oral promise by the owner to give Athans the exclusive right to sell the lot for fifteen days, and that no consideration passed.)

During the period of Athans' agency for plaintiff, he continued his general brokerage business with the public. On the 10th or 11th of October Athans was trying to sell to the Edwards a vacant lot in another part of the city and the Edwards did not like the location but expressed themselves as preferring to buy in the general vicinity of West Seventh Street; Athans then told them that he had for sale the lot in controversy here and when he designated it, the Edwards knew the lot.

Plaintiff and Mrs. Edwards were well acquainted with each other, having had dealings together concerning landscaping, a business in which plaintiff was also engaged. Mrs. Edwards went to plaintiff's office on October 11th to talk about shrubs etc., and found plaintiff talking to Athans on the telephone. When the telephone conversation was finished Mrs. Edwards asked plaintiff if she was dealing with Athans, being told she was, and during the ensuing conversation plaintiff explained to Mrs. Edwards the nature of her business with Athans, showed her the plat prepared, and explained generally the whole project, and told her Athans was buying the lots for

her and getting options on others included in the plat. On October 12th (next day after the conversation between plaintiff and Mrs. Edwards) the Edwards went and looked at the Griffin lot late in the afternoon and telephoned Athans that night they would buy the lot and pay the $7000 for it as Athans had priced it to them when they talked on the preceding day. Athans told them to come to his office next morning; they did so and Athans then prepared and entered the Edwards into a contract of purchase with Griffin the owner. The Edwards placed with Athans $2000 as earnest money. The contract provided for deeds to be executed and passed in January following for reasons satisfactory to all.

On October 18th, within the fifteen day option period reported by Athans to plaintiff, the latter advised Athans that her plans were perfected and that she was ready to take the Griffin lot at $6500 net to the owner and for him to go and close it up with Griffin and that she would pay him 5% on the purchase price as a commission. Athans said he would try to close the deal for her. (Plaintiff testified that Athans did not tell her at that time nor at any other time that he had already sold the lot to the Edwards on the 13th of October.) On several occasions after October 18, and before the expiration of the fifteen day period, plaintiff urged Athans to close the deal with Griffin for her. She later learned from another source that Athans had sold the lot to the Edwards on October 13th.

This suit by plaintiff followed. Her trial pleadings set out the pertinent parts of the foregoing matters; she alleged the agency of Athans, his duties and fidelity as such agent, his infidelity and breach of the confidential trust reposed in him by plaintiff, by his acts of making the sale to the Edwards; that the Edwards had full knowledge of Athans' agency and connived with him to breach the trust he owed to plaintiff. Based upon the facts and circumstances related, plaintiff alleged that although the property was deeded to the Edwards, it was in fact and in law held for plaintiff under a legal constructive trust as a result of law and equity.

Plaintiff prayed for title and possession of the lot under a constructive trust and by her pleadings tendered $7000 to be applied by the court in adjusting the equities between the parties and Griffin, the original owner, who held a lien against the property to secure deferred payments.

After Edwards received the deed from Griffin, they sold to Athans a house from the lot for $1500. Plaintiff contended that the house was worth $2500 and sought to recover from the Edwards and Athans that amount and also to recover the $500.00 received by Athans as a commission for the sale to the Edwards. She prayed that the value of the house and the commission be taken into consideration in the adjustment of equities and be deducted from her tender, and after such adjustments, any amount remaining in the tender be returned by the court to her.

Plaintiff pleaded alternatively to the effect that if she was not entitled to recover the lot, then for damages sustained by reason of Athans' infidelity and against the Edwards for having knowingly participated therein. In view of the record we shall not take further notice of this phase of the case.

Each of the defendants urged many special exceptions to plaintiff's pleadings; these exceptions were principally to the effect that since plaintiff's action was based upon an option to buy real estate and since her petition disclosed such option was not in writing it was violative of the Statute of Frauds. Vernon's Ann.Civ.St. art. 3995. Their answers consisted of general denials and specially the Statute of Frauds as against plaintiff's asserted cause of action.

All special exceptions were overruled and the case was tried to a jury on special issues. There were numerous objections made by the defendants to the submitted issues, all of which were overruled by the court. There were no requested issues in addition to those given by the court by any of the parties.

The substance of the jury's answers in response to the issues is as follows: (1) Athans agreed with plaintiff about October 9, 1945 to attempt to secure from Griffin an option for plaintiff to purchase the lot involved. (2) Athans did on October 10th procure a "verbal" option for fifteen days

on the lot. (3) In procuring the fifteen day option Athans was acting for plaintiff in pursuance to an agreement between them to that effect. (4) During the fifteen day option period plaintiff was ready, able and willing to exercise the option to purchase. (5) During the fifteen day option period plaintiff instructed Athans to exercise the option for her. (6) On October 13th when the Edwards entered into a contract with Griffin to buy the lot, they knew that Athans, as agent for plaintiff, held an option to purchase the lot. (7) The reasonable market value of the house removed from the premises was $1500.

It must be conceded that the verdict was in all respects favorable to plaintiff's theory presented by the first count in her petition. The issues of agency, breach by Athans of the fiduciary relationship between him and plaintiff, knowledge of and participation therein by the Edwards, and the value of the house admittedly sold by the Edwards and removed by Athans appear by the verdict to be established, from which it is contended by plaintiff that all of the elements of a constructive trust in her favor followed.

Each of the defendants timely filed motions for a summary instruction. The request of McDonald was sustained and he was dismissed from the suit, of which action no complaint is made in this record by any party. The court overruled the requested summary instruction of each of the other defendants, the Edwards and Athans. After the verdict was received and before judgment was entered, the court overruled defendants' respective motions for judgment non obstante veredicto.

The trial court entered judgment on the verdict, which, as framed, is somewhat complicated; but we construe it to mean that upon the verdict of the jury and from other undisputed facts, a constructive trust as a matter of fact and law was created in favor of plaintiff against the Edwards to the extent that the Edwards held legal title to the lot in controversy under and by virtue of their deed from Griffin, as trustees for the equitable benefit of plaintiff, subject to the vendor's lien held by Griffin against the property. That pursuant to that trust, the court accepted the tendered $7000 by plaintiff to be applied to adjusting the equities between the respective parties; that the title and possession of the lot in controversy was awarded to the plaintiff and that out of the tendered $7000 the court ordered paid to Griffin $3795.57 in satisfaction of deferred payments held by him, and that so much thereof as was necessary to reimburse the Edwards for the amount they had expended in the transaction be paid to them, which amount the court found to be $1204.43, after deducting an item of $2000 made up of the $1500 for which the Edwards had sold the house from the premises and the $500.00 paid to McDonald and Athans as commissions, and ordered the excess of the tendered $7000, after making such payments and deductions, returned to plaintiff.

Timely motions for new trial were filed by each of the remaining defendants and overruled by the court, from which judgment this appeal has been perfected by the Edwards and Athans.

Points of error relied upon by the Edwards for reversal are in substance: Error of the trial court (1) in overruling and not sustaining the special exceptions to plaintiff's petition; (2) refusing to sustain these defendants' motions for an instructed verdict; (3) in overruling these defendants' objections to the charge of the court; and (4) in overruling and not sustaining these defendants' motion for judgment non obstante veredicto.

We shall later note the points of error relied upon by defendant Athans.

 The points of error assigned by the Edwards are grouped and argued together, since they admittedly are dependent upon a single contention; that is, as contended in their brief, they say the sole question for determination by this court is "Did Mrs. Nellie Whitehead, plaintiff below and appellee here, have a contract enforceable either in law or in equity?" Their entire brief is devoted to a refutation of plaintiff's right to recover in this suit upon a basis of the enforcement of the terms of the concededly "verbal" fifteen day option to purchase the lot in controversy.

As we view this entire record, plaintiff's suit is not based upon the purported parol

option to purchase, if indeed the commitment made by the seller Griffin to give Athans fifteen days' exclusive agency to sell the property amounted to an option to purchase. We do not feel called upon to determine that question. This for the reason plaintiff did not sue Griffin nor any other person for the enforcement of such promise by Griffin. In support of the judgment entered, the plaintiff contends (and we think she is supported by the record as a whole) that her cause of action is based upon one for tort against Athans and the Edwards, who knowingly participated therein, growing out of a breach of a confidential and fiduciary relationship existing between plaintiff as principal and Athans as her agent to purchase and procure for her the property in controversy.

Substantially everything that the Edwards present in argument and authorities can be conceded, yet if plaintiff's action was not upon the so-called option with Griffin, then none of such argument and authorities would be applicable to the case before us.

The case of Kinzbach Tool Co. v. Corbett-Wallace Corporation, 138 Tex. 565, 160 S.W.2d 509, we think covers substantially all points involved in this appeal. The holdings support the judgment in the instant case. There, plaintiff, as principal, sued its agent for gains obtained in violation of the agent's fidelity to his principal and to have fixed against such gains a constructive trust in the hands of a third person who knowingly participated with the agent in his act of disloyalty. The participating third party was made a defendant along with the agent. The court there announced the following principles of law applicable to the situation which was very similar to the one before us: An agency is a fiduciary relationship; the agent as such fiduciary is in duty bound to deal openly with his principal since he owes to his principal utmost good faith to not betray that confidence reposed in him by his principal; the one occupying such a fiduciary relationship to another must measure his conduct by high equitable standards and not by the standards required in dealings between ordinary parties. All third parties who knowingly participate with the fiduciary in the breach of his duty to his principal become joint tort feasors with the fiduciary and are liable as such. If the fiduciary should acquire gains to himself by virtue of his violation of his relationship to his principal, he takes same in trust for his principal and cannot acquire it unto himself as against the claim of his principal. Where the agent occupying the fiduciary relationship takes any "gift, gratuity or benefits in violation of his duty or acquires any interest adverse to his principal without a full disclosure, it is a betrayal of his trust and a breach of confidence and he must account to his principal for all he has received." The judgment entered in the cited case is very much like the one from which this appeal was perfected. It is the last case by our Supreme Court coming to our attention on the points involved here. Many authorities are cited by the court on each of the pronouncements.

The jury verdict in this case, which finds support in the evidence, establishes the fact of Athans' agency for plaintiff as his principal; that he breached that fiduciary relationship by causing the sale of the lot by Griffin to the Edwards at a time when he was in duty bound, as agent, to procure the sale, if at all, to plaintiff; that the Edwards knew of the relationship when they entered into the contract of sale with Griffin for the purchase of the lot and thereafter took a conveyance from him; that the value of the house sold by the Edwards to Athans was $1500. The undisputed testimony shows that the Edwards sold the house at that price to Athans and defendants admitted that Athans received for himself and McDonald $500 commissions on the sale to the Edwards. We think it immaterial what Athans did with the commission money after he received it. It is obvious that Athans breached his fidelity to plaintiff as her confidential agent. Under authority of Kinzbach Tool Co. v. Corbett-Wallace, supra, Athans and the Edwards were joint tort feasors as against plaintiff and neither could retain any gains coming to either of them from the transaction, resulting from the infidelity of Athans for his breach of the fiduciary relationship with plaintiff.

In Kuehn v. Kuehn, Tex.Civ.App., 232 S.W. 918, affirmed by the Supreme Court

in 242 S.W. 719, the court had under consideration a property settlement between the husband and wife in contemplation of divorce. The husband fraudulently concealed the true status of the property rights from the wife and received more than his share at the time of the division. The wife subsequently sued him for a division of that part wrongfully retained, and the court held that a fiduciary relationship existed between the parties and that the excess of property retained by the husband required the fixing of a constructive trust thereon in favor of the wife. In this connection the court quoting with approval from 139 Cyc. p. 169, says: "One who acquires land or other property by fraud, misrepresentation, imposition, concealment or under any other such circumstance as renders it inequitable for him to retain it, is in equity regarded as a trustee of the party who suffers by reason of the fraud or other wrong and who is equitably entitled to the property. In all cases of this character equity will impress a constructive trust upon the property so acquired in favor of the person equitably entitled thereto, although he may never have had any legal estate therein."

In Gillean v. Witherspoon, Tex.Civ.App., 121 S.W. 909, 913, the court held that if a person obtained legal title to property under circumstances of imposition or fraud, the rules of equity and good conscience will not permit him to hold and enjoy that beneficial interest: "Courts of equity, in order to administer complete justice between the parties, will raise a trust by construction out of the circumstances or relations; and this trust they will fasten upon the conscience of the offending party, and will convert him into a trustee of the legal title and order him to hold it for the original owner or to execute the trust in such manner as to protect the defrauded party and promote the safety and interest of society."

█ In Slay et al. v. Burnett Trust et al., 143 Tex. 621, 187 S.W.2d 377, applicable to the fiduciary relationship between Athans and the plaintiff in this case, the court by quotation re-affirmed the rule of fidelity in this language: "Where persons enter into fiduciary relations each consents as a matter of law, to have his conduct toward the other measured by the standards of the finer loyalties exacted by courts of equity. That is a sound rule and should not be whittled down by exceptions." The cited case is authority for holding one who occupies the relationship of trustee to another cannot acquire any gain or profit unto himself by reason of the trust but must account to the principal or beneficiary for all such gains, profits or property acquired by the trustee in virtue of the trust.

The defendant Athans assigns two points of error, which are very complicated in their nature but appear to be a complaint that the court awarded judgment against Athans, as well as against the Edwards, for $2000, made up of the item of $1500, the value of the house purchased by Athans, and the $500 commissions received by him for having negotiated the sale to the Edwards, and ordering execution issued on the judgment as entered.

Apparently the burden of appellant Athans' argument is that in view of the fact that the $2000 deducted from the $7000 tender made by plaintiff was to cover the identical $2000 for which the joint judgment was entered, no execution should have been ordered against Athans to satisfy that judgment. He says in his brief, "otherwise the decree does not at all affect Mr. Athans." Again he states in his brief: "If the judgment is affirmed he (Athans) will not suffer; if reversed, he will not prosper." Athans appears to be mostly concerned because execution may issue against him for the $2000.

As we construe the judgment entered by the trial court, the effect of the disbursement by the court in the manner provided in the judgment of the $7000 will amount to the payment and satisfaction of the $2000 item referred to by Athans; that item is to be deducted from the cash tendered and the excess refunded by the court to the plaintiff; it must follow that if our construction of the judgment is correct then when the disbursement of the $7000 is made under the order of the court, the two items of $1500 and $500, for which judgment was entered against Athans, will be satisfied and proper entries should and perhaps will be made to that effect.

It is true that even though it be proper to declare a constructive trust in favor of the plaintiff on the property involved and award to her the title thereto, such equitable proceeding would not necessarily involve her recovering the $500 commission against Athans and Edwards; but in view of the above cited authorities denying to the fiduciary and those who knowingly participate with him the right to gain and retain profits resulting from his breach of fidelity, plaintiff should not be required to repay from her tender into court the gains thus acquired by Athans. Under our construction of this record and the rights of the respective parties, plaintiff has done no legal wrong for which she should be penalized in paying to Athans a commission as a reward for his breach of fidelity.

We have concluded after a very thorough study of the entire record before us and the contentions of the respective parties that equity has been done by the trial court in this case and we therefore overrule all points of error and affirm the judgment.

Affirmed.