**In re JOHN TAYLOR COMPANY, et al., Debtors.**

**Phyllis TAYLOR, Individually and as Executrix of the Estate of John W. Taylor, Appellant,**

v.

**Gary J. KNOSTMAN, Trustee of John Taylor Company a/k/a John Taylor and Company, et al., Appellees.**

No. 90–2865.

United States Court of Appeals, Fifth Circuit.

July 9, 1991.

Rehearing Denied Aug. 2, 1991.

Wendell S. Loomis, Houston, Tex., for appellant.

Randy W. Williams, Goforth & Lewis, Houston, Tex., for appellees.

Before KING and JONES, Circuit Judges.[1]

PER CURIAM:

On February 18, 1979, John Taylor Co. (a corporation), Jay Tee Products Company, Inc., John Taylor, Jr., and Phyllis Taylor filed petitions for reorganization in bankruptcy. Under § 403(a) of the Bankruptcy Reform Act of 1978, their cases were to be conducted and determined under the Bankruptcy Act of 1898 rather than the then-newly enacted Bankruptcy Code of 1978. On March 12, 1979, the bankruptcy court ordered the cases "consolidated." John Taylor died in 1984; appellant Phyllis Taylor was appointed executrix of his estate. In 1985, Gary Knostman was appointed Trustee and the case was converted to a liquidation proceeding. Eventually, the Trustee filed a complaint asking for authority to sell certain property of the estate free and clear of all liens. Taylor's answer claimed that the property was exempt as her residential and business homesteads. After a one-day trial, the bankruptcy court ruled in favor of the Trustee as to all property save a single parcel on which Taylor's residence was situated. The district court affirmed in all respects. Reluctantly, we must reverse the case and remand for further proceedings.

In remanding, we also urge the bankruptcy court either to consider dismissing this entire case or to conclude it forthwith. The debtor's business shut down long ago, after being operated for a brief period by the Trustee. The Trustee for several years had a contract of sale pending with a former competitor of the Taylors, but it was dependent in part on the outcome of this adversary proceeding. At oral argument, the Trustee could not say whether the contract remains "alive;" a later submission suggests that this case may have outlived the prospective purchaser. There seems to be no point in prolonging this case on the bankruptcy docket of the Southern District of Texas.

## I.

■ The central issue in this case is whether Taylor may claim certain property of the estate as a business homestead. The property consists of several contiguous parcels, all of which the Taylors individually leased to John Taylor Co., one of the two debtor corporations.[2] These two entities were closely held corporations through which John Taylor conducted a business of manufacturing and selling bedding supplies. The bankruptcy court ruled that Taylor could not exempt this property as a business homestead, concluding: "Property leased to a corporation loses its homestead character under the Business Homestead Test, even though the corporation is wholly-owned and operated by the homestead claimants." The district court affirmed this conclusion, calling it the "established law in Texas." Based on our review of the authorities, some of them quite ancient, we reach the opposite conclusion. To the extent she is otherwise entitled to do so (see Part II below), Taylor may claim the property as her business homestead.

As its only authority, the district court cited *Duncan v. Woolf,* 380 S.W.2d 862, 868 (Tex.Civ.App.1964). That case does not support the bankruptcy court's conclusion quoted above. In *Duncan,* a 73–year–old dairy farmer leased the subject property to an unrelated individual for ten years and at the same time sold the individual all of his dairy equipment. The court denied the claimed business homestead exemption because the property was changed from "a place for the exercise of a calling by B. Duncan, as head of a family,—to property which served as an independent source of income to him from proceeds to be derived in the form of rent." *Id.* The case involved leasing, but not leasing to a corporation wholly-owned and operated by the homestead claimants.

---

1. Judge Alvin B. Rubin was a member of the original panel but died on June 11, 1991 before this decision was rendered. This matter is being decided by a quorum. 28 U.S.C. § 46(d).

2. Two other parcels contained houses—one the Taylors' family home, the other a house that the Taylors rented out. The Trustee concedes that the first of these is exempt as a residential homestead, and Taylor apparently concedes that the second is not exempt at all.

The Trustee cites, in addition to *Duncan*, three other cases in support of the bankruptcy court's conclusion. One, *Westergren v. Campbell*, 127 S.W.2d 985 (Tex.Civ. App.1939), considered the propriety of granting the petitioners relief from payment of costs of appeal or from furnishing security. The only portion of the opinion relating to homesteads at all sustained the implicit finding of the trial court that "any original homesteading character that may have attached [to the petitioners' tract] had long since been removed from certain specific parts of this tract, by its segregation for ... rental-purposes alone, hence its abandonment for homestead purchases had been fully accomplished." *Id.* at 987. Two, *Yates v. Home Building & Loan Co.*, 103 S.W.2d 1081, 1085 (Tex.Civ.App.1937), concluded that when the owner of a residence homestead "erects another house, though on the same lot, and uses the second house for purposes other than homestead [such as renting], that portion of the homestead lot ceases to be a part of the homestead." Finally, *In re Brokmeyer*, 51 B.R. 704, 705–06 (Bankr.S.D.Tex.1985), held that the planting and harvesting of a small hay crop on the subject property did "not provide the Debtors [who operated a water well-drilling business] with a meaningful or substantial source of income or support" and that the property was not the place where the Debtors exercised their drilling business.

None of these cases involved leasing the purported business homestead property to a claimant-owned corporation. We have found no reported Texas case addressing such a situation. Two decisions, however, suggest that such leasing does not cause the property to lose its business homestead character. In *Inman v. Inman*, 80 S.W.2d 1103, 1105 (Tex.Civ.App.1935), the creditor contended that the property "was abandoned by Thomas Inman when he leased it to the partnership consisting of himself and the creditor," because "the partnership was a legal entity distinct from the individual members composing it, and therefore use by the partnership would confer no homestead rights on the partners." In reply, the court held: "It being uncontradicted

that the store building was being used by the partnership at the time of Thomas Inman's death, there was no abandonment shown...." *Id.* In *Long Bell Lumber Co. v. Miller*, 240 S.W.2d 405, 406 (Tex.Civ. App.1951), the facts were as follows:

The evidence discloses that appellee was conducting a business on said lots ... and that appellee had formed a corporation ... and that this corporation, as well as another ..., were operating out of the buildings on said lots.... The corporate stock was owned by members of appellee's family. Although the name of the corporation was placed on the business building, the evidence discloses that appellee continued to operate his business individually in the buildings on the lots in question.

The court of appeals concluded that "the trial court was not in error in holding under the evidence in the cause that the [claimant] had not abandoned his homestead ... by the formation of a corporation which at times worked out of [his] business homestead." *Id.* at 407.

On the other hand, "[i]t is the law of [Texas] that when, as in this case, a business homestead is conveyed to a corporation, the stock of which is owned by the grantors, ... the property is no longer the homestead of the grantors, even though they continue to occupy it." *Nash v. Conatser*, 410 S.W.2d 512, 521–22 (Tex.Civ. App.1966) (citing *Nowlin v. Wm. Cameron & Co.*, 54 S.W.2d 1035 (Tex.Civ.App.1932)). Taken together, these cases appear to yield this result: though *Nash* would preclude claiming a business homestead on property *transferred or conveyed* to a claimant-owned corporation, *Inman* and *Long Bell Lumber* would allow such a claim when the property is only *leased to or used by* the corporation. Under this reading of Texas law, Taylor should receive the business homestead exemption—to the extent she is otherwise entitled to it—for the property on which her late husband conducted the family business through a closely-held corporation.

## II.

 Taylor also argues that the scope of the business homestead exemption should

be measured from 1983, the year in which Texas amended its constitution and statutes to increase the amount of property defined as a homestead.[3] *See* Tex. Const. art. XVI, § 51 (amended 1983); Tex.Prop. Code.Ann. § 41.001(a) (amended 1984). Section 6 of the 1898 Bankruptcy Act, formerly 11 U.S.C. § 24, provided that the Act "shall not affect the allowance to bankrupts of the exemptions which are prescribed ... by the State laws in force *at the time of the filing of the petition*" (emphasis added). The petitions in this case were filed in 1979. Under § 6 of the 1898 Act, Taylor is entitled to the homestead exemption available at that time, not to the new homestead exemption put into force in 1983. The conversion order entered in 1985 does not affect this conclusion. *See In re Williamson*, 804 F.2d 1355, 1359–62 (5th Cir.1986) (holding that conversion of case from reorganization proceeding to liquidation proceeding does not change the relevant date for exemption eligibility).

Taylor attempts to get around § 6 by pointing out that the Texas homestead amendments are expressly made retroactive—applying regardless of when the homestead was acquired—and by pointing to *In re Starns*, 52 B.R. 405, 412–13 (S.D. Tex.1985) (King, Circuit Judge, sitting by designation), which upheld such retroactivity against a due process challenge. Taylor's argument confuses two different kinds of retroactivity. The retroactivity provisions on which Taylor relies purport to change the *pre*-bankruptcy rights of creditors and homestead claimants. As a matter of state law, and to the extent consistent with the United States Constitution, Texas may do so. Texas law cannot, however, change the *post*-bankruptcy rights of claimants and creditors as determined by federal law, especially in the face of the explicit language of § 6. Taylor's homestead exemption must therefore be determined by reference to the law existing in 1979—the time of the filing of the petitions.[4]

### III.

The judgment of the district court is REVERSED. Taylor should receive a business homestead exemption for the subject property in accordance with the law of Texas as it stood in 1979. The case is REMANDED for such a determination.

**3.** We note that Taylor did not claim the business homestead exemption until March 28, 1988, more than nine years after the bankruptcy petitions were filed. Such late amendment, however, is not per se proscribed by Bankruptcy Rule 110 (1898 Act). *See generally In re Williamson*, 804 F.2d 1355, 1358 (5th Cir.1986) (adopting *In re Doan*, 672 F.2d 831, 833 (11th Cir.1982) (per curiam)). The lower courts did not base their denials of the claimed exemption on the grounds of undue delay or prejudice. The Trustee responded to the claim on the merits and does not argue undue delay or prejudice in his appellate brief.

**4.** Taylor has contended that the Trustee had no authority to question her homestead rights because the bankruptcy court's order converting the case from a reorganization to a liquidation proceeding was "void." The voidness allegedly springs from the court's inadvertent casting of the order of conversion in Arabic numerals (Chapter 11 to Chapter 7), as if the case were pending under the 1978 Bankruptcy Code, rather than in the Roman numerals symbolic of the Bankruptcy Act under which this case was filed. This contention does not warrant serious discussion, and we reject it.