EDITH H. JONES, Circuit Judge:
Valerie Canfield (“Canfield”) appeals the denial of her objection to the claim by her former husband, Paul William Orso (“Orso”), that certain annuities he receives as part of a structured tort settlement are exémpt from the property of his bankruptcy estate under Louisiana law. La. R.S. 22:647. The bankruptcy and district courts attempted to distinguish our decision in Young v. Adler, 806 F.2d 1303 (5th Cir.1987), which held that certain types of annuities are not exempt.' Although the issue is close, we conclude that Young governs this case, and we reverse and remand with instructions to include Orso’s annuities in the property of his estate.
I. FACTUAL AND PROCEDURAL BACKGROUND
In November 1986, several months after Canfield and Orso were married, Orso was involved in a serious automobile accident which left him permanently and severely brain damaged. As a result of his injuries, Orso became mildly mentally retarded with an I.Q. of less than 70.
Orso and Canfield filed suit against several defendants seeking damages for the injuries sustained by Orso in the accident. In September 1989, the tort action was settled, and Orso and Canfield entered into consent judgments with the defendants. Under the terms of the settlement, both Orso and Canfield were to receive lump sum payments. In addition, Orso was to receive monthly payments for the rest of his life, with 30 years of payments guaranteed to Orso or his designee, from two defendants and their insurers (collectively the “defendants”). The defendants purchased annuity contracts to provide Orso with the agreed upon monthly payments.
In May 1990, Orso and Canfield obtained a judgment of separation and entered into a settlement of community property agreement. In December 1990, Canfield filed a petition in state court to enforce certain provisions of the community property settlement agreement. Orso and Canfield were formally divorced in *639 January 1991. In July 1994, the state court entered judgment in favor of Can-field for $48,000 in arrearages and ordered Orso to pay Canfield $1,000 per month for the succeeding five months.
Five days after entry of the state court order, Orso filed a Chapter 7 bankruptcy petition. Orso listed as an asset the periodic payments he received as a result of the structured settlements from the 1987 tort action, but he claimed that these payments were exempt from the bankruptcy estate as annuities under La.Rev.Stat. Ann. § 22:647 (West 1995).
Canfield filed her proof of claim with the bankruptcy court for $53,494.92, which represented the judgment entered by the state district court for Orso’s arrearages. The bankruptcy court denied Canfield’s motion for relief from the automatic stay, her request that the court abstain from exercising jurisdiction, and her motion to dismiss. Canfield also objected to Orso’s claim of exemption for the annuity proceeds. The bankruptcy court upheld the exemption after a lengthy analysis of Young and Louisiana’s exemption statute for annuities. Canfield has appealed the district court’s order affirming the claim of exemption.
II. ANALYSIS
The issue on appeal is whether Orso’s structured settlement payments derive from annuities exempt from creditors’ claims pursuant to Louisiana law, or whether, as in Young, they are de facto payments on a nonexempt debt owed to Orso.[1]
Once the debtor commences an action in bankruptcy, all property in which the debtor has a legal or equitable interest becomes property of the bankruptcy estate. 11 U.S.C.A. § 541 (West 1993); McManus v. Avco Financial Services of Louisiana, 681 F.2d 353, 354 (5th Cir.1982). After all the property is subsumed within the bankruptcy estate, the debtor may exempt certain property, insulating it from most creditors’ claims. McManus, 681 F.2d at 354. Under the Bankruptcy Code, states can allow their debtors to exempt (1) property included in the federal “laundry list” of exemptions, 11 U.S.C.A. § 522(d), or (2) property specified under Louisiana law and federal laws other than 11 U.S.C. § 522(d). Id. at 355. Since Louisiana “opted out” of the federal laundry list of exempt property, Louisiana law governs whether Orso’s structured settlement payments constitute exempt annuities.
At the time Orso filed his bankruptcy petition, exemptions for annuities were covered by the old version of La.Rev. Stat. Ann. § 22:647(B), which states:
The lawful beneficiary, assignee, or payee, including the annuitant’s estate, of an annuity contract, heretofore or hereafter effected, shall be entitled to the proceeds and avails of the contract against the creditors and representatives of the annuitant or the person effecting the contract, or the estate of either, and against the heirs and legatees of either such person, saving the rights of forced heirs, and such proceeds and avails shall also be exempt from all liability for any debt of such beneficiary, payee, or as-signee or estate, existing at the time the proceeds or avails are made available for his own use.
Although § 22:647(B) was amended in 1999,[2] federal law requires this court to apply the state law in effect at the time the debtor filed his bankruptcy petition. See 11 U.S.C. § 522(b)(2)(A)(“an individual *640 debtor may exempt from property of the estate ... any property that is exempt under ... State or local law that is applicable on the date of the filing of the petition .... ”). The fact that the amendment is interpretive, and that the Louisiana Legislature expressly intended the amendment to have retroactive application, does not change our analysis. See In re John Taylor Company (Taylor v. Knostman), 935 F.2d 75 (5th Cir.1991). In Taylor, this court held that the debtor could not avail herself of an amendment to the Texas homestead exemption that was passed subsequent to her filing for bankruptcy protection. As in the present case, the amendment was “expressly made retroactive” and merely changed how the exemption at issue was “defined.” Id. at 78. The Taylor court refused to apply the amendment, though, given the explicit language of § 6 of the Bankruptcy Act of 1898, which is almost identical to § 522(b)(2)(A):[3] “Texas law cannot, however, change the post-bankruptcy rights of claimants and creditors as determined by federal law, especially in the face of the explicit language of § 6.” Id. Thus, in following Taylor, this court must determine the scope of the Louisiana annuity exemption by reference to the law existing at the time of the bankruptcy filing in 1994.
In its opinion, the bankruptcy court expressed its understanding of the “proper” scope of unamended § 22:647 (hereinafter, simply “§ 22:467”) as well as its dislike for Young. Having found, as a matter of fact, that each stream of payments constitutes an annuity under La.Rev.Stat. Ann. § 20:33, the bankruptcy court held that the annuities were exempt under the plain language of § 22:647. Alternatively, the bankruptcy court purported to distinguish Young on grounds discussed later herein. The district court agreed with the bankruptcy court’s reasoning: “The conclusion that these contracts are indeed annuities mandates that under Louisiana law ... each is exempt from seizure.”
By relying on their understanding of the “plain language” of the statute, the lower courts declined to follow Young — even though Young interpreted the statute at issue. In Young, this court made an Ene guess as to how the Louisiana courts would interpret § 22:647. Having made such a guess, neither the lower courts nor this court is at liberty to ignore the precedential value of this interpretation:
[W]hen our Erie analysis of controlling state law is conducted for the purpose of deciding whether to follow or depart from prior precedent of this circuit, and neither a clearly contrary subsequent holding of the highest court of the state nor a subsequent statutory authority, squarely on point, is available for guidance, we should not disregard our own prior precedent on the basis of subsequent intermediate state appellate court precedent unless such precedent comprises unanimous or nearly unanimous holdings from several — preferably a majority — of the intermediate appellate courts of the state in question.
Federal Deposit Ins. Corp. v. Abraham, 137 F.3d 264, 269 (5th Cir.1998). Prior to Orso’s filing, no Louisiana appellate court had questioned this court’s interpretation of § 22:647.[4] Furthermore, until § 22:647 was amended, neither the Louisiana Su *641 preme Court nor the Louisiana legislature had questioned this court’s interpretation of § 22:647. Thus, in determining the law that was in effect at the time of Orso’s filing, this court is bound by Young’s analysis of the unamended Louisiana statute.[5]
In Young, the debtor, an attorney, could not exempt payments received on an otherwise non-exempt debt for legal services by funding those payments with an annuity. The Young court held that even if the payments may “strictly speaking, [be] an annuity,” this court must “pierce the veil of this arrangement to determine its true nature.” Young, 806 F.2d at 1306. Thus, whether the payments are exempt depends on the nature of the stream of payments: “It is the substance of the arrangement rather than the label affixed to it that determines whether the payments are exempt under the Louisiana statutes as proceeds from an annuity, or accounts receivable, and part of the bankruptcy estate.” Id. at 1307.
The court relied on several factors to determine the true nature of the arrangement. According to Young, annuities that are exempt under § 22:647 have the following features: (1) they are rights to receive fixed, periodic payments, either for life or for a term of years, (2) the annuitant has an interest only in the payments themselves and not in any fund, and (3) the annuitant surrenders all right and title in and to the money he pays for the annuity. Id. at 1306-07. A stream of payments constitutes a non-exempt account receivable if: (1) the creditor has a claim against the debtor, (2) the debtor agrees to pay the creditor in installments at regular intervals, (3) the debt or principal sum is due to the creditor although payable only in the manner agreed upon, and (4) the creditor has a property interest in the debt or principal sum. Id.
Although Young was owed an account receivable for attorney’s fees and Orso is owed compensation for an injury, the factors that were determinative in Young are also determinative in the present case. Given the way the parties structured the settlement, “the monthly payments made to [Orso] represent nothing more than installment payments on debts to cover [the underlying debt] owed by the [debtors].” Id. at 1307. Under the terms of the agreement, Orso did not retain an ownership interest in the annuity itself, but he remained a creditor of the parties who owed the installment obligations.[6] *642 That is, the settlement of the underlying tort action gave Orso a claim against the tortfeasors and their insurers for specific amounts. The defendants agreed, inter alia, to pay Orso $2,030.00 per month for 30 years or for life, whichever was greater. Thus, the minimum amount to which Orso was entitled is $730,800.00 (($2,030 * 12) * 30). As in Young:
as each monthly payment is made it reduces by a proportionate amount the [minimum] debt. [Orso], therefore, retains a right against the underwriters to the remaining principal until the debt is fully extinguished ... Retaining such a right renders the so-called annuity, in substance, nothing more than an account receivable, and not exempt from the bankruptcy estate.
Young, 806 F.2d at 1307. Unlike Young, if Orso lives longer than 30 years, Orso is entitled to continue receiving payments. But this difference does not alter the Young analysis. Orso retains a right in the minimum principal sum and in any payments due and owing to him for living more than 30 years after the effective date of the settlement agreement. This is sufficient to give Orso the requisite “interest in not just the payments under the annuity, but in ... the installment debt owed him by the [defendants].” Id.
Furthermore, as in Young, Orso did not deliver a sum of money to anyone to fund the annuities, which is a central characteristic of an annuity.[7] The annuity was funded by the tortfeasors in exchange for Orso’s releasing the defendants from tort liability for the 1986 accident. Thus, Orso’s settlement agreements satisfy all the factors set out in Young: (1) Orso had a claim against the debtors, (2) the debtors agreed to purchase an annuity that would pay Orso installments at regular intervals, (3) Orso is entitled to the payments but has no control over the manner or timing of distribution, and (4) Orso has a property interest enforceable against the tortfeasors and their insurers in the payments due under the settlement agreements. Therefore, under Young, the payments received by Orso are not exempt.[8]
The Appellees’ attempts to distinguish Young are unpersuasive.[9] The Appellees contend that the payments are exempt because Orso constructively paid for the annuities. But the funds were no more constructively paid by Orso than by Young. And the Young court did not consider constructive payment sufficient. In fact, in order to be exempt, the court stated that Young should have accepted his total fees at the time of settlement and then purchased an annuity policy with the remainder. In so doing, Young would have transferred his interest in the funds as consideration for periodic payments. But neither Young nor Orso did this. As a result, each had “an interest in not just the payments under the annuity, but in a larger sense also in ■ the principal fund or source — the installment debt owed him by the [defendants] — just as if he had left the *643 money with the [defendants] and agreed to accept payment in installments.” Id. at 1307.
In addition, contrary to the Appellees’ suggestion, the fact that Young’s lump sum payment would have been taxable as ordinary income, whereas Orso’s personal injury award would not (see §§ 104 and 130 of the Louisiana Tax Code), is not dispositive. Neither is the fact that Young was not the plaintiff in the suit that gave rise to the settlement agreement. The Young court did not predicate its interpretation of § 22:647 on tax considerations or the “non-plaintiff’ status of the person claiming an exemption; rather, Young depends only on the factors discussed above. Instead of accepting a lump sum settlement, Orso and Young “left the money with the debtors” and permitted them to satisfy their obligation by means of annuity contracts. The consequence of making such a tactical decision during settlement negotiations is that the stream of payments is not exempt.
III. CONCLUSION
Given Taylor, the scope of the Louisiana annuity exemption is “determined by reference to the law existing ... [at] the time of the filing of the petitions.” 935 F.2d at 78. Since § 22:647 was amended after Orso filed his bankruptcy petition, this court is bound to follow Young’s interpretation of unamended § 22:647. See Abraham, 137 F.3d at 269. Under Young, even though the debt owed to Orso is funded by an annuity, this court must look at the nature of the underlying stream of payments to determine whether it is an exempt “annuity” or a non-exempt debt in the nature of an account receivable.
Applying the Young factors to this case, Orso’s payments are non-exempt. Under the terms of the settlement agreements, Orso received regular installments from annuities funded by the debtors. Orso had no control over the annuities, but he was guaranteed to receive monthly payments for at least 30 years, and he retained rights against the tortfeasors if the annuities failed. Such “installment payments of a debt ... do not constitute an annuity” under Young and are not exempt from property of Orso’s bankruptcy estate. Young, 806 F.2d at 1307. We reverse and remand with instructions to include the annuities in Orso’s estate.
REVERSED AND REMANDED.

. This court reviews questions of bankruptcy law de novo. See Matter of Crowell, 138 F.3d 1031, 1033 (5th Cir.1998)(citing In re Kennard, 970 F.2d 1455, 1457-58 (5th Cir.1992)). We have jurisdiction over this appeal from the grant of an exemption in bankruptcy, which is a final order.

. Acts 1999, No.63, § 3, amended subsection B of § 647 to state that "[t]he term 'annuity contract’ shall include any contract which: ... (b) [s]tates on its face or anywhere within the terms of the contact that it is an 'annuity' including but not limited to an immediate, deferred, fixed, equity indexed, or variable annuity, irrespective of current pay status or *640 any other definition in Louisiana law.” La. Rev.Stat. 22:647(B)(2)(1999). According to § 4 of Acts 1999, No. 63, the foregoing amendment "is interpretive and shall apply to any annuity contract or tax-deferred arrangement covered by the provisions of the Act which is in existence on or prior to the effective date of this Act.”

. Section 6 of the Bankruptcy Act of 1898, formerly 11 U.S.C. § 24, provided that the Bankruptcy Act "shall not affect the allowance to bankrupts of the exemption which are prescribed ... by the State laws in force at the time of the filing of the petition.”

. Subsequent to Orso’s filing, only one Louisiana appellate court had challenged the Young interpretation. See WellTech, Inc. v. Abadie, 683 So.2d 809 (La.App. 5th Cir.1996). Since this court must apply the unamended version of § 22:647 given Taylor and § 522(b)(2)(A), we do not reach the issue of whether the amended version of § 22:647 constitutes "a *641 subsequent statutory authority, squarely on point" that would abrogate our prior holding in Young.

. In their brief, the Appellees contend that the bankruptcy court applied the appropriate method of analysis — what they called the "civilian lawyer's method of analysis.” Apparently, this method involves looking at the operative Louisiana statutes anew, independently of prior Fifth Circuit analysis: “the real reason the Appellant's argument fails is because the statute and its lack of limitations is so clear.” But this court relies on strict stare decisis rather than civilian analysis and cannot simply ignore the legal interpretation of § 22:647 provided in Young. Even though the bankruptcy court believes this court needs to re-think Young's suggestion that the "retention of a claim against an underwriter or purchaser of an annuity is equivalent to maintaining control over the fund used to purchase the annuity,” In re Orso, 219 B.R. 402, 459 (Bkrtcy.M.D.La.1998), the bankruptcy court is not empowered to re-think and overturn Fifth Circuit precedent on its own. As Taylor and Abraham make clear, this court is bound to follow its prior Erie analysis of § 22:647.

. For example, Orso's settlement agreement with Cook Construction Company, Inc. and Liberty Mutual Insurance Company of Massachusetts states that "the Insurer on behalf of the Defendant hereby agrees to pay the following sums ...”
B. $1,180.00 per month for life with 30 years of said payments guaranteed to him or to his designee should he die before 30 years, said payments beginning on October 15, 1989 ...
“Plaintiff is and shall be a general creditor to the Defendant and/or the Insurer ... The Defendant or the Insurer may fund Periodic Payments by purchasing ... an annuity policy ... All rights of ownership and control of such annuity policy shall be vested in the Defendant or the Insurer.” (emphasis added). Orso’s settlement agreement with the State of Louisiana has similar language.

.This court also addressed what constitutes an annuity under Louisiana law in Farm Credit Bank of Texas v. Guidry, 110 F.3d 1147 (5th Cir.1997). The court held that the general definition of an annuity, which governs the term as it is applied elsewhere in the Civil Code, is set out in article 2793 of the Louisiana Civil Code: "Article 2793 defines an annuity as follows:' 'The contract of annuity is that by which one party delivers to another a sum of money, and agrees not to reclaim it so long as the receiver pays the rent agreed upon.’ Under that definition, a fundamental characteristic of an annuity is the complete divestiture by the annuitant of all ownership ■ interest in the principal fund ... an annuitant surrenders all right and title in and to the money he pays for it.” Id. at 1150.

. See also In re Rhinebolt, 131 B.R. 973, 976 (Bankr.S.D.Ohio 1991); In re Johnson, 108 B.R. 240, 243 (Bankr.D.N.D.1989).

. The district court distinguished Young by stating that the contract in[1] Young was a different kind of contract than the one in this case. The district court did not explain the ways in which the contracts differed. For the reasons discussed above, this court rejects this cursory analysis and holds that Orso’s structured settlement is sufficiently similar so as to be governed by this court's analysis in Young.

. " ‘In [the case of an interpretive act], there is an apparent rather than real retroactivity, because it is the original rather than the interpretive law that establishes rights and duties.’ ” Ardoin, 360 So.2d at 1338 (citing and quoting A. Yiannopoulos, Civil Law System 68 (1977)). Moreover, Act 63 expressly states that it "is interpretive and shall apply to any annuity contract or tax-deferred arrangement covered by the provisions of this Act which is in existence on or prior to the effective date of this Act.” La. Acts 1999, No. 63, § 4.