**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

_____

No. 98-31008
_____

In The Matter Of: PAUL WILLIAM ORSO,

Debtor.

VALERIE CANFIELD,

Appellant,

versus

PAUL WILLIAM ORSO; MARTIN A. SCHOTT,

Appellees.

_____

Appeal from the United States District Court
for the Middle District of Louisiana

_____

February 25, 2002

Before KING, Chief Judge, JOLLY, HIGGINBOTHAM, DAVIS, JONES, SMITH, WIENER, BARKSDALE, EMILIO M. GARZA, DeMOSS, BENAVIDES, STEWART, PARKER, and DENNIS, Circuit Judges.[*]

WIENER and DENNIS, Circuit Judges:

In this appeal we decide whether, under the laws of Louisiana that establish exemptions from seizure, the proceeds of annuity contracts purchased by obligors to fulfill a personal injury

_____

[*]Judge Edith Brown Clement did not participate in this appeal.

settlement structured to comply with 26 U.S.C. §§ 104(a)(2) and 130[1] are exempt from claims of creditors of the payee who is a debtor in bankruptcy. A divided panel of this court[2] concluded that our opinion in Young v. Adler[3] required it to hold the instant annuity payments are not exempt under the Louisiana exemption statute as it existed when bankruptcy proceedings were commenced, and that a post-petition, expressly-interpretive amendment of that statute could not be considered when ascertaining its meaning as of the date of filing for bankruptcy protection. A majority of the judges in active service voted to rehear the case en banc.[4] Disagreeing with the panel majority, we affirm the bankruptcy and district courts' conclusion that the annuity payments in question are exempt from seizure, and thus exempt from claims asserted by

---

[1] The Periodic Payment Settlement Act of 1982 amended the Internal Revenue Code of 1954 to allow claimants to receive periodic payments tax free if the payments are paid to settle a personal injury claim. See Pub. L. No. 97-473, Title K, § 101(b)(1), Jan. 12, 1983, 96 Stat. 2605 (1982)(codifying the tax-free status of such structured settlements provided by Revenue Rulings 77-230,79-220 and 79-313). The Act also added § 130 of the Internal Revenue Code, which allows a third person assignee to defer from its gross income the amount it received for accepting assignment of a liability to make periodic payments as damages. If the assignee uses a qualified annuity to fund the periodic payments, the basis of such asset shall be reduced by the amount initially excluded from gross income by reason of the purchase of such asset, and any gain recognized on a disposition of such asset shall be treated as ordinary income. See Paul J. Lesti, Structured Settlements, § 16:4 (2d ed. 1993).

[2] 214 F.3d 637 (5th Cir. 2000).

[3] 806 F.2d 1303 (5th Cir. 1987).

[4] 242 F.3d 534 (5th Cir. 2001).

2

Creditor-Appellant Valerie Canfield in Debtor-Appellee Paul William Orso's bankruptcy proceedings.

I.

FACTS AND PROCEEDINGS

Orso suffered serious injuries in an automobile accident in November 1986, a few months after he and Canfield were wed. The closed-head injuries Orso sustained in the accident left him permanently and severely brain damaged, rendering him mildly mentally retarded, with an I.Q. of less than 70. In November 1987, Canfield and Orso sued for damages resulting from his injuries.

In September 1989, Orso and Canfield entered into a consent judgment with the defendants in the tort litigation. On the same day, the parties executed a settlement agreement, the pertinent provision of which specified that Orso would receive two payments each month for the longer of thirty years or his lifetime, one such payment for $1,180 and another for $850.

To ensure Orso's full and timely receipt of these periodic payments, annuity contracts ("the Annuities") were purchased. Orso is the named payee or annuitant in both contracts, but is not the owner of either; the defendant tortfeasors' insurers obtained the policies and retained ownership. The annuity contract that pays $1,180 per month was issued by Liberty Life Assurance Company of Boston in connection with Orso's settlement with one of the tortfeasors, Cook Construction Co., Inc., and its insurer, Liberty Mutual Insurance Co. The annuity contract that pays Orso $850 per

3

month was issued by Western National Life Insurance Company in connection with his settlement with the State of Louisiana, having been purchased by the Conseco Annuity Guarantee Company, the company to which the State had assigned the obligation to make the periodic payments. The tortfeasors and their respective insurers were released from further tort liability but remained obligated for the periodic payments to Orso, who presumably could thereafter look to his original judgment debtors and their insurers in the unlikely event that the issuers of the Annuities should be unable or unwilling to continue making the specified monthly payments.

Orso and Canfield divorced in 1991. They entered into a property settlement under which Orso, who also receives U.S. Navy and Social Security disability benefits, agreed to pay Canfield $1,250 per month from September 1990 to August 1993 and $1,000 per month for the ensuing nine months. Orso defaulted; Canfield filed suit in state court late in 1990; Orso's mother, Janice Orso, filed interdiction proceedings in May of 1992 and was appointed as her son's curatrix in September; and, in July 1994, a state court rendered a judgment in favor of Canfield for Orso's arrearages under their property settlement agreement.

On December 24, 1994, Orso's mother, acting in her capacity as curatrix of her interdicted son, filed a Chapter 7 bankruptcy petition on his behalf. The annuity payments were listed as assets of the estate but were claimed to be exempt under La. Rev. Stat. Ann. § 22:647, which in relevant part shields payments under

4

annuity contracts from seizure.  Canfield, who filed a $53,494.92 claim in Orso's bankruptcy for the arrearages under their property settlement agreement, objected to Orso's efforts to exempt the annuity payments, but the trustee supported Orso's claim of exemption.  Almost three years later, the bankruptcy court rendered a lengthy opinion denying Canfield's objection.  The district court affirmed.

A divided three-judge panel of this court reversed the district court, concluding that Orso's payments from the Annuities should not be exempt in his  bankruptcy proceedings.[5]  The panel majority's judgment was then vacated when we voted to rehear the case en banc.[6]

## II.

## ANALYSIS

A.   Standard of Review

The bankruptcy court's denial of an objection to a debtor's claim of exemption is a final order, subject to immediate appeal.[7] We have jurisdiction to hear this appeal of the district court's affirmance of the bankruptcy judgment.[8]  In a bankruptcy case, we review the decision of the district court in its capacity as an

---

[5]   214 F.3d 637 (5th Cir. 2000).

[6]   242 F.3d 534 (5th Cir. 2001).

[7]   England v. FDIC (In re England), 975 F.2d 1168, 1171 (5th Cir. 1992).

[8]   28 U.S.C.A. § 158(d) (West 2001).

5

appellate court.  We review the bankruptcy court's findings of fact affirmed by the district court for clear error, but review the district court's conclusions of law de novo.[9]

B.    Framework

Reduced to its essentials, this case requires us to interpret a state statute in the context of bankruptcy.  The elements that frame this inquiry are (1) interests in property owned by the debtor (2) on the date that his petition in bankruptcy was filed, (3) which property interests the debtor contends are exempt from the claims of his creditors (4) by virtue of exemptions specified in the applicable state statutes.  The state law question requiring statutory interpretation within this framework is whether the property interests for which exemption is claimed —— here, periodic payments from annuities obtained in a structured settlement of personal injury claims —— come within the ambit of the subject state exemption statute, § 647 of the Louisiana Insurance Code ("§ 22:647").[10]

1.    Bankruptcy Context

It is axiomatic that when a petition in bankruptcy is filed, thereby commencing bankruptcy proceedings, all property in which

---

[9]    HECI Exploration Co., Employees' Profit Sharing Plan v. Holloway (In re HECI Exploration Co.), 862 F.2d 513, 518 (5th Cir. 1988) (citing In re Missionary Baptist Found. of Am., 818 F.2d 1135, 1142 (5th Cir.1987)).

[10]    La. Rev. Stat. Ann. § 22:647 (West 2001).  We refer to the statute as § 22:647 rather than simply § 647 to avoid confusion with references to sections of the Bankruptcy Code.

the debtor has a legal or equitable interest becomes property of the bankruptcy estate.[11]  The debtor then may exempt property that is protected from creditors by applicable state or federal law.[12] Like the Bankruptcy Act before it, the Bankruptcy Code gives each state an option:  A state may allow debtors to (1) exempt from their bankruptcy estates property included in the federal "laundry list" of exemptions,[13] or (2) rely on state law and federal law other than the laundry list for allowable exemptions.[14]  Louisiana has chosen the latter course,[15] so our decision today turns on interpretation of Louisiana law.[16]

Whether a particular property or interest in property of a debtor's bankruptcy estate is eligible for exemption is, like so many other questions in bankruptcy, determined strictly "as of" the

---

[11]  11 U.S.C.A. § 541 (West 2001).

[12]  The 1898 Bankruptcy Act, § 6 (formerly 11 U.S.C.A. § 24), provided that it "shall not affect the allowance to bankrupts of the exemptions which are prescribed . . . by the State laws in force at the time of the filing of the petition."  See Taylor v. Knostman (In re John Taylor Co.), 935 F.2d 75, 78 (5th Cir. 1991).

[13]  11 U.S.C.A. § 522(d) (West 2001).

[14]  11 U.S.C.A. § 522(b)(2)(A) (stating that a debtor may choose to exempt "any property that is exempt under Federal law, other than subsection (d) of this section, or [under] State or local law . . .".).

[15]  See La. Rev. Stat. Ann. § 13:3881(B)(1) (West 2001).

[16] FDIC v. Abraham, 137 F.3d 264, 267 (5th Cir. 1998)(quoting Ladue v. Chevron, U.S.A., Inc., 920 F.2d 272, 274 (5th Cir), reh'g denied 925 F.2d 1461 (1991), citing Commissioner of Internal Revenue v. Estate of Bosch, 387 U.S. 456, 465 (1967)).

7

date on which the petition in bankruptcy is filed. Regarding non-laundry list exemptions, § 522(b)(2)(A) specifies that the property for which exemption is claimed must be exempt under a federal, state, or local law "that is applicable on the date of the filing of the petition."[17] We cannot emphasize too strongly that the day on which the bankruptcy petition is filed is the "as of" date for determining the applicability of exemption provisions. Even though, of necessity, the judicial decision-making process on exemption issues takes place subsequent to the filing of the petition, the court must take a retrospective "snapshot" of the law and the facts as they stood on the day the petition was filed. The Supreme Court's pronouncement on this point more than seventy-five years ago continues to be good law today:

> When the law speaks of property which is exempt and of rights to exemptions, it of course refers to some point of time. In our opinion this point of time is the one as of which the general estate passes out of the bankrupt's control, and with respect to which the status and rights of the bankrupt, the creditors and the trustee in other particulars are fixed . . . . [O]ne common point of time is intended and that [] is the date of the filing of the petition.[18]

For purposes of substantive state law effecting exemptions from seizure, then, any changes that occur after the filing of the bankruptcy petition — including any changes designated as being

---

[17]  11 U.S.C.A. § 522(b)(2)(A).

[18]  White v. Stumpf, 266 U.S. 310, 313 (1924).

8

retroactive —— can have no direct effect on the court's determinations concerning exemption.[19]

## 2. Interpretation of Applicable State Law

For Orso to prevail, he must demonstrate that the payments produced by the particular annuities purchased by or on behalf of his tort debtors in the structured settlement of their consent judgment are covered by § 22:647. In determining whether the proceeds and avails of the structured settlement annuities fall within the Louisiana exemption, we resort to the acts of the state legislature and to the pronouncements of the state's courts as well.

Having established the applicable framework for resolution of the question whether Orso's proceeds from the Annuities are exempt, we now examine the Louisiana annuity exemption statute, § 22:647.

## C. Construction of the Louisiana Statute

As noted, Orso contends that his property right in the stream of annuity payments from his structured settlement comes within the purview of the version of § 22:647, specifically subsection (B), that existed on the day his bankruptcy petition was filed. For the following reasons, we agree.

When, in 1948, the Louisiana Legislature enacted that state's Insurance Code, it specified that the proceeds and avails of annuity contracts are exempt from all debt liability. The language of that enactment is largely retained in the current version of the

---

[19] See id.; 11 U.S.C.A. § 522(b)(2)(A).

statute.[20]   The term "annuity contract" was not modified; neither was it limited to particular types, classes, or categories of annuity.  That being the case, the term's grasp is co-extensive with its reach.

By Act 125 of 1958, the legislature transferred the annuity exemption, essentially verbatim and without substantive change, into Title 22, Section 647 of the Louisiana revised statutes.  It has remained there ever since, without any real alteration, even though over the years, new provisions not relevant to this case were added, and some of the section's provisions were rearranged.  Thus, the substance of § 22:647's annuity exemption has remained constant.

The title and substance of Louisiana's annuity exemption statute reads now, as it did at the time Orso filed bankruptcy:

> § 647. Exemption of proceeds; . . . annuity
> * * *
> B.[]  The lawful beneficiary . . .or payee . . . of an annuity contract . . . shall be entitled to the proceeds and avails of the contract against the creditors and representatives of the annuitant . . . and such proceeds and avails shall also be exempt from all liability for any debt of such beneficiary, payee . . . existing at the time the proceeds or avails are made available for his own use . . . .

All concede that this exemption is controlling in bankruptcy just as it is outside bankruptcy.  And this provision of Louisiana law is the one on which Orso relies, as he must, in arguing that his monthly annuity payments are exempt from his creditors' claims in

---

[20]   1948 La. Acts 195, § 14.37.

bankruptcy, specifically from his ex-spouse.  We are satisfied that the quoted provision does just that and does so unambiguously.

A plain reading of the annuity exemption statute leads naturally to the conclusion that the proceeds that Orso is entitled to receive from the structured settlements constitute proceeds and avails declared exempt from liability and seizure by his creditors. As the record is devoid of any evidence of fraud or wrongdoing by Orso or on his behalf, the exemption must be given full effect in his case.

Starting, as we always must, with the plain wording of the statute, we see initially that there is nothing ambiguous about it; and we know that when a statute is unambiguous we do not go behind its terms to ascertain the intent of the Legislature.  Tracking § 22:647, the title of which foretells that it deals with exemption of proceeds from, <u>inter</u> <u>alia</u>, annuities, we see that under subsection (B) as it existed when he filed his bankruptcy petition, Orso was a "lawful beneficiary" who was the "payee . . . of an annuity contract . . . ."  The statute next tells us that in this capacity Orso is "entitled to the proceeds and all avails of the contract" and that "such proceeds and avails shall also be exempt from all liability for any debt of such . . . payee," namely Orso in this case.

Consequently, Orso's claim of exemption should prevail under § 22:647 unless some extraneous legal impediment prevents the financial products that produce this stream of monthly proceeds from

11

being "annuity contracts" within the intendment of the statute. As we shall explain, we conclude that these products, i.e., the Annuities, acquired as they were by or for the tortfeasors in compliance with their structured settlement with Orso, indeed are free from any legal impediment to being annuity contracts for purposes of § 22:647.

In its reversal of the bankruptcy and district courts' holdings that the Annuities are "annuity contracts" for purposes of the statute, the panel majority agreed with Canfield that a "piercing of the annuity" in the context of Orso's structured settlements mandates a determination that, as of the petition date, the Annuities were not "annuity contracts" for purposes of § 22:647. In so doing, the majority relied largely on our decision in Young v. Adler (In re Young).[21]

D.    Young v. Adler (In re Young); McGovern v. First National Bank of Jefferson Parish (In re McGovern)

In Young, we rejected an attempt by a debtor, who was an attorney-at-law, to claim as exempt the proceeds from an annuity purchased for his benefit and at his direction, in payment of legal fees owed to him by his client. We wrote that, "[w]hile the payments Debtor [the attorney] claims to be exempt are, strictly speaking, an 'annuity,' they are also accounts receivable. We must, therefore, pierce the veil of this arrangement to determine its true

---

[21]    806 F.2d 1303 (5th Cir. 1987).

nature."[22]  Thus in <u>Young</u> we "pierced" the "veil of this arrangement," but did not find fault with the annuity contract itself; that is, we did not parse the contractual provisions of the annuity but rather the transaction that produced it.  In other words, in <u>Young</u> we did not invalidate the annuity on its face but disregarded it as having been based on an impermissible underlying transaction.  Under Louisiana law at the time of <u>Young</u>, there were three actions through which a creditor could "pierce," avoid, or disregard his debtor's fraudulent transfers: the revocatory action,[23] the oblique action,[24] and the action in declaration of a simulation.[25]  We are not, however, required to decide whether the Louisiana courts would, in any such action, "pierce" either a contract meeting the definition of annuity under § 22:647 or the underlying transaction that produced such a contract.  This is because, in <u>Young</u>, neither our opinion nor that of the district court contains an overt application of any of these actions or a clear finding of fraud.  Although it is true that there are many distinguishing features between the arrangement or transaction in <u>Young</u> and Orso's structured settlements, in the end the legal principles governing the two situations are indistinguishable.  We

---

[22]  <u>Id.</u> at 1306 (emphasis added).

[23]  <u>See</u> La. Civ. Code Ann. arts. 1969-94 (1870).

[24]  <u>See</u> La. Civ. Code Ann. art. 1990 (1870).

[25]  <u>See</u> La. Civ. Code Ann. art. 2239 (1870); <u>see</u> <u>also</u> <u>In re</u> <u>Orso</u>, 214 F.3d at 653 (Dennis, J., dissenting).

13

cannot, therefore, reverse the panel majority here without overruling Young.

A distinction is even more difficult to draw between Orso's situation and the one considered in our unpublished but precedential opinion in In re McGovern.[26] There, expressing reliance on Young, we held that periodic payments received by a debtor in the structured settlement of his personal injury lawsuit were in fact installment payments on an underlying debt, not proceeds of an annuity, and therefore were non-exempt under Louisiana law.

Sitting en banc today, we conclude that Young and McGovern are basically indistinguishable from the instant case. Consequently, a literal interpretation and application of Young as precedent cannot properly control either case. Thus, for the foregoing reasons we today reverse the panel majority and reinstate the bankruptcy court's recognition of Orso's annuity contract proceeds as exempt; and we expressly overrule Young and McGovern.

Annuities of Orso's kind, purchased pursuant to structured personal injury settlements that comply with federal income tax requirements, are certainly within the contemplation of the Louisiana exemption as it existed on Orso's petition date. The defendants with whom Orso (and, for that matter, Canfield) settled delivered to the insurance companies "a sum of money, and agree[d]

---

[26]   918 F.2d 175, No. 89-3849 (5th Cir. Oct. 25, 1990) (unpublished table decision).  Before 1996, our unpublished opinions were as equally binding precedent as were our published opinions. See 5th Cir. R. 47.5.3.

14

not to reclaim it so long as the receiver pays the rent agreed upon,"[27] bringing the Annuities squarely within the classic definition of an annuity contract under Louisiana law as it existed when Orso filed for bankruptcy protection. Funded or fixed annuity contracts, like those that produce Orso's periodic payments, are and have always been stereotypical Louisiana annuity contracts under any definition of the term.

E.    Exemption of All Annuities

As should be obvious by now, our recognition that Orso's periodic payments are exempt under § 22:647 is grounded in the conclusion that the Annuities, which produce those payments, are "annuity contracts" under the version of that statute that was in effect on the date Orso's bankruptcy petition was filed. The reasoning that leads us to this conclusion is diametrically opposed to the reasoning of the panel majority, to wit: (1) the Annuities were not "annuity contracts" under the version of § 22:647 that was in effect on the petition date, (2) to enjoy exemption, then, the Annuities would have to be "annuity contracts" under the statute as amended by Act 63 of 1999[28] ("the 1999 Amendment"), and (3) the Annuities are not entitled to benefit from the 1999 Amendment because, as they postdated the filing of Orso's petition, any retroactive effect of such a post-petition enactment could not be

_____

[27]   La. Civ. Code Ann. art. 2793 (West 2001).

[28]   1999 La. Acts 63.

15

applicable under the "snapshot" of the law and facts as of the petition date. The panel majority also erred in treating the 1999 Amendment as a retroactive change in the law. It was, instead, purely interpretive of the way the law had always been —— before, on, and after the petition date.

Because Louisiana stands alone among the 50 states as a hybrid Civil Law/common law jurisdiction, its situation is unique: The State's constitution, its codes and its statutes, are the primary sources of law; court decisions are treated as secondary sources of law, without stare decisis precedential effect.[29] When interpreting the law of Louisiana, as we do today, we are bound to honor, among other things, Louisiana's distinction between substantive and interpretive laws, recognizing that:

> The character of interpretive legislation is evident in a civil law system such as Louisiana. "Judicial opinions, although invaluable interpretations of the law, are merely that; interpretations of the legislative will. The supreme expression of legislative will in Louisiana is of course the codes and

---

[29] Louisiana courts do, however, honor "jurisprudence constante," giving judicial deference to a rule established in a solid line of cases. See Doerr v. Mobil Oil Corp., 774 So. 2d 119, 128-29 (La. 12/19/00) (stating that "a long line of cases following the same reasoning within this state forms jurisprudence constante" and distinguishing stare decisis); see also Prytania Park Hotel, Ltd. v. Gen. Star Indem. Co., 179 F.3d 169, 175 (5th Cir. 1999) ("It is axiomatic that in Louisiana, courts must begin every legal analysis by examining primary sources of law: the State's Constitution, codes, and statutes. Jurisprudence, even when it rises to the level of jurisprudence constante, is a secondary law source in Louisiana.") (citing Alvin B. Rubin, Hazards of a Civilian Venturer in Federal Court: Travel and Travail on the Erie Railroad, 48 La. L. Rev. 1369, 1372 (1988)).

statutes." Interpretive laws provide the Legislature with the opportunity to pronounce the "correct" interpretation to be given to existing laws.'[30]

The Louisiana Legislature expressly characterized the 1999 Amendment as <u>interpretive</u>, meaning that it is not new law and not a retroactive change, but is the correct construction of existing law. In Louisiana, "interpretative legislation does not create new rules, but merely establishes the meaning that the interpreted statute had from the time of its enactment. It is the original statute, not the interpretive one, that establishes the rights and duties."[31] Although other states allot similar interpretive roles to the judiciary alone, the Louisiana approach is within the broad latitudes states enjoy in choosing which roles are performed by which state institutions.[32] When, as here, federal courts must

---

[30] <u>Pierce v. Hobart Corp.</u>, 939 F.2d 1305, 1308-09 (5th Cir. 1991) (quoting <u>Winstead v. Ed's Live Catfish & Seafood</u>, 554 So. 2d 1237, 1242 (La. App. 1989), <u>cert. denied</u>, 558 So.2d 570 (La. 1990)); circuit precedent in accord: <u>Harrison v. Otis Elevator Co.</u>, 935 F.2d 714, 719 (5th Cir.1991); <u>Louisiana World Exposition v. Federal Ins. Co.</u>, 858 F.2d 233, 244-45 (5th Cir.1988); <u>Laubie v. Sonesta Int'l Hotel Corp.</u>, 752 F.2d 165, 167-68 (5th Cir.1985). "The general rule in this Circuit is that one panel cannot overrule another panel. This rule applies with equal force to cases in which state law supplies the substantive rule of decision[.]" <u>Broussard v. Southern Pac. Transp. Co.</u>, 665 F.2d 1387, 1389 (5th Cir. 1982)(en banc)(internal citations and quotations omitted).

[31] <u>Ardoin v. Hartford Accident & Indem. Co.</u>, 360 So.2d 1331, 1338-39 (La. 1978).

[32] <u>See</u> <u>Dreyer v. Illinois</u>, 187 U.S. 71, 84 (1902) ("Whether the legislative, executive, and judicial powers of a state shall be kept altogether distinct and separate, or whether persons or collections of persons belonging to one department may, in respect to some matters, exert powers which, strictly speaking, pertain to

17

interpret a state statute that is functioning under a congressional delegation of exclusive authority to declare the law, we properly include in our consideration and treat as instructive, legislative enactments and judicial decisions of the State that postdate filing of the bankruptcy petition yet properly bear on our construction of the statute in question to conform with the way the State interprets it. This is especially true of unmistakably interpretive declarations of the Louisiana Legislature.[33]

When we view the 1999 Amendment in this framework, we see that its interpretation, relating to § 22:647 as it has always existed, strongly reinforces the conclusion that the statute's exemption was applicable to Orso's receipts on the day he filed for bankruptcy protection. Even though the subsequent enactment of the 1999 Amendment might have been precipitated in part by our analysis in Farm Credit Bank of Texas v. Guidry,[34] the wording of that purely interpretive addition is broader than required merely to ensure the

---

another department of government, is for the determination of the state.").

[33] Thus, we need not revisit our opinion in Taylor v. Knostman (In re John Taylor Co.), 935 F.2d 75 (5th Cir. 1991), in which we held that the Texas homestead exemption in place at the time of the filing of the bankruptcy petition, and not a subsequent amendment, must be used to determine the scope of the applicable exemption. Although retroactive, the Taylor amendment could not operate to change the debtor's post-bankruptcy rights, which are determined under federal law. Id. at 78. Orso's case is distinguishable because his periodic payments under the Annuities were exempt under Louisiana law as it existed at the time he filed for bankruptcy.

[34] 110 F.3d 1147 (5th Cir. 1997).

inclusion of the subset of <u>variable</u> annuities among the set of all annuity contracts exempted by § 22:647. We find implicit in the wording of the 1999 Amendment, which is the Louisiana Legislature's interpretation of the statute <u>ab</u> <u>initio</u>, that periodic payments generated by an annuity contract —— any annuity contract —— are exempt from claims of creditors, whether within bankruptcy or outside bankruptcy. The 1999 Amendment underscores Louisiana's consistent stance that courts are to construe annuity contracts liberally, in favor of their preservation and enforcement. Although nothing in § 22:647 expressly prohibits courts from entertaining timely-brought, code-authorized challenges to the underlying transaction that generates the annuity contract —— as, for example, under Louisiana's revocatory action or action to declare a simulation —— the case we address today does not invoke any such action; thus the question is not before us and we intimate no opinion on that issue. What is clear under § 22:647, however, is that courts are not authorized (1) to "pierce" annuities or the underlying transactions that produce them except by actions expressly provided for that purpose by Louisiana law, or (2) to parse the annuity contract itself for qualification of the proceeds as exempt.

### III.

### CONCLUSION

We hold that the periodic payments to Orso under his structured settlement, flowing as they do from annuity contracts, are exempt

19

from his bankruptcy creditors under Louisiana law, a conclusion bolstered by (but not wholly reliant on) the 1999 Amendment to § 22:647. Because they are proceeds of annuity contracts, the payments to Orso are exempt from his bankruptcy estate under clearly established Louisiana law extant on the day that his petition in bankruptcy was filed. And, as today we are rehearing this case en banc, we expressly overrule <u>Young</u> and <u>McGovern</u>, as well as anything in <u>Guidry</u> that conflicts with the foregoing. The judgment of the bankruptcy court, as affirmed by the district court, recognizing the exemption of the monthly annuity payments to Orso, is

AFFIRMED.